## HILL & al. vs. HATCH & al.

The defendant having been employed under the plaintiffs in selling goods at a store in *Levant,* assigned to them all the book debts of the concern, there being then certain claims outstanding against the concern entitled to off-set, the defendant agreeing to render assistance in the collection. The books and accounts were handed over to F. an attorney, for collection — after which, the books being with the defendant by consent of the attorney, certain accounts on the leger were balanced by the defendant, he making the following entries, " by your account rendered" — " by hay" — " by cash." Afterward the parties submitted their mutual claims to arbitration, and in pursuance of the award, the defendant gave bond with surety, to deliver over all the property, &c. belonging to the concern which had been received by him. In an action on the bond, it was held, that the mere entries on the leger aforesaid, (except the cash) unaccompanied by other evidence or explanation were not sufficient to charge the defendant for the amount — the *presumption* being that they were accounts legally existing against *the concern* and not against *the defendant personally.*

THE facts in this case, which was debt on bond, appear in the opinion of the Court, which was delivered by

PARRIS J. — This is an action of debt on bond to secure the performance of certain stipulations on the part of the defendant, *Hatch,* as particularly described in the condition.

From the case it appears that in 1827, *Hatch* agreed with the plaintiffs to take a quantity of goods to *Levant* village, and, as their agent, to hire a suitable store in their names, and, with all

diligence and faithfulness, attend to the business of said store, under certain restrictions against keeping books, or trading upon credit, or trading or trafficking for his own emolument.

After a lapse of about two years, *Hatch* made an invoice of property belonging to the *Levant* store, which he assigned to the plaintiffs. Among other articles of property assigned, was a list of accounts, amounting to about seven hundred dollars, which appeared on the books to be due and unpaid, at the time of the assignment. The accounts and books were delivered to *Mr. Forbes*, an attorney at law, for collection ; and it was agreed that *Hatch* should afford any assistance, in his power, in the collection and settlement of the accounts.

It appeared that, subsequent to this assignment, *Hatch* had the books in his possession, and settled and discharged, of the accounts assigned, two hundred and twenty-six dollars, by entering a credit in the leger, as follows : — " By your account rendered ;" " By hay ;" — and " By cash," which last item was, however, something less than one dollar.

Subsequent to all these proceedings, the parties submitted all their concerns relative to the *Levant* store, to referees for settlement, who, after having heard the parties, made their award, among other things, that *Hatch* should deliver to *Hill* and *Dexter* all the property of every description belonging to the *Levant* store concern, if he has not already so delivered the same, and give them a bond in the sum of $1500 to hold them harmless from any demands that may be exhibited against them in consequence of *Hatch's* agency at *Levant*.

In pursuance of this award, the bond declared on, in this action, was given, conditioned, among other things, that *Hatch* shall, without delay, deliver to *Hill* and *Dexter*, all the property, of every description belonging to the concern of the *Levant* store, not already delivered, and shall deliver up all other goods, money or property of said *Hill* and *Dexter* by him received. The only breach alleged, by the plaintiffs, was in not delivering up property received by *Hatch*, subsequent to the assignment, in discharge of the accounts assigned ; — and as evidence that he had thus received property, they relied upon the entries made by *Hatch* in the leger, as aforesaid.

The jury were instructed that, if it had been proved to their satisfaction that the referees, in adjusting the accounts between the parties, took into consideration that the value of the balances on the leger, which were assigned to the plaintiffs, might be reduced by existing claims in off-set, and thereupon made a deduction on that account in their estimate of the value of these balances, the subsequent extinguishment of a portion of them under the allowance and direction of *Hatch*, arising from the allowance of existing claims in off-set against the joint concern at *Levant*, would constitute no breach of the bond in suit ; but it would be otherwise, if *Hatch* had received the money, or had allowed in off-set private demands against himself alone.

We do not perceive that there could be any valid objection to this instruction. — The accounts assigned, whether settled by *Hatch* or the plaintiffs, would be legally liable to such deductions as should be claimed for payments actually made before the assignment and notice thereof to the debtors in account. — These accounts arose, unquestionably, for goods sold and delivered from the store ; and whatever payments had been made, whether credited on the books or not, would avail the debtors in defence, at all times, whether they were or were not allowed by *Hatch*.

The counsel for the plaintiffs requested the Judge to instruct the jury that the allowances in the leger being made by *Hatch*, it was to be presumed that he had received the money, or had allowed thereon demands against himself, unless he proved that the facts were otherwise. — But the jury were instructed that in the absence of direct proof, the leger having passed to the plaintiffs or their attorney, and it being proved that *Hatch* and his Clerk had been requested to assist in the settlement of the accounts, and the leger having been furnished to *Hatch* by the attorney of the plaintiffs, it was to be presumed that no off-sets had been allowed, but such as existed against the joint concern at the time of the assessment of those balances to the plaintiffs, unless it was otherwise proved.

The accounts assigned arose from sales made at the *Levant* store, while under the care of *Hatch*. The books, in which the charges were entered, were those of that store, and whatever

payments were made, although not credited, would be equally available to those by whom they were made, as if they had been regularly and duly entered on the books.

The assignment passed to *Hill* and *Dexter* nothing more than what was *legally* due, after making a just settlement between debtor and creditor and striking the balance ; and it was important to *Hill* and *Dexter,* that this should be ascertained ; that those claiming deductions or allowances for payments made previous to the assignment should be allowed to the extent of their legal claims, but nothing more.

It was to accomplish this object, no doubt, that they required *Hatch's* assistance in the settlement of these accounts. — He was not constituted their attorney to make collections ; — that business was entrusted to *Mr. Forbes.* — If *Hatch* did so far transcend his duty, as to receive cash, or allow accounts against himself individually, in off-set to those before assigned, he must be held answerable.   We do not think the presumption is against *Hatch* for so much of the credits as are entered under " accounts rendered," or where the entry is for specified articles.   It is fairly to be presumed that the account rendered, was an account properly allowable in off-set against the direct charges on the book — an account that grew up previous to the assignment, and which the individual claiming it would be legally entitled to have deducted as well against the assignees as the assignor ; — and if the plaintiffs would avoid the force of the presumption they had abundant means to do so. — They had the books, and from them were furnished with ample means of ascertaining the names of witnesses by whose testimony this presumption, if erroneous, might be overcome.   From the omission of the plaintiffs to avail themselves of the testimony of those whose accounts were rendered and allowed, it is to be inferred that such testimony would be unavailing.

Moreover, all these transactions of adjusting accounts assigned and making the entries on the leger, were prior to the reference. The subject matter of the accounts assigned, and particularly their value, was considered by the referees, and formed one of the items on which their final decision was predicated.   The books were then in the hands of the plaintiffs, or their attorney, under

their control; — they are presumed to have known what progress had been made in the settlement of their business, and yet no claim was then urged by the plaintiffs against *Hatch* for any sums received subsequent to the assignment.

As it was no part of *Hatch's* duty to make collections, but merely to assist in the settlement of the accounts, it is not to be presumed that he transcended his duty in making such settlements, or practised a fraud upon those under whom he was employed. Those who seek to charge him on that ground must furnish proof of the fact. We think the transactions of *Hatch*, as they appear from the leger, may be explained as having been done in pursuance of, and in accordance to the original intention of the parties; and in the absence of all proof to the contrary, it is our duty thus to explain them.

In the argument, this case has been compared to that of an agent's receiving money from his principal. — It is said that when proof is made of the receipt of the money by the agent, the burden of proof is thrown upon him to account for it. No doubt it is so. — But that may be done in various modes. A clerk, whose business it is to vend goods in a store, may, perhaps, be considered in the light of agent for his employer; still, we think it would hardly be contended that he could be required to produce direct proof that he had accounted to his principal for every dollar, which had been taken in payment for goods sold, or for such sums as he may have received and credited on book. The credit would be in his hand writing on the leger, but the presumption would be, from the course of business, that he had accounted as was his duty; and the principal, in order to hold him accountable, would be required to go further than merely to show the entries on the book. And why? The answer is plain; because from the course of business in which the agent is employed, and the manner of transacting it, the presumption arises that the agent or clerk appropriated nothing to his own use; but, as was his duty, seasonably accounted for all by him received. So here, *Hatch* was to perform a particular service; viz, to assist in the settlement of the accounts by him assigned. No one knew so well as himself the situation of those accounts. It was not his duty to receive cash, or allow accounts against himself individu-

ally, in discharge or diminution of the accounts assigned ; and we think the books do not necessarily or presumptively shew that he did so.

The presumption is that every man acts honestly, and his acts are to be so construed, unless shown to be otherwise ; — and in the case before us, this presumption may well authorise us to consider *Hatch,* in making the entries which he did, as entering what had actually taken place previous to the assignment, and making the books conform to the truth of the case.

When he enters a " bill rendered," it is to be construed as rendered at the date, but of articles delivered before the assignment, and in satisfaction of the account. We do not perceive that this throws any unreasonable burden on *Hill* and *Dexter.* They have the books, and had them at the trial, and the control of them when the hearing took place before the referees. They knew, or might have known, by inspecting these books, who to call as witnesses to rebut the presumption of fairness on the part of *Hatch ;* and neglecting to raise this question before the referees in any form, or, at the trial in this Court, to introduce the persons who would instantly establish their position, if true, there seems to be nothing unreasonable in considering that question at rest.

*Rogers,* for the plaintiffs.

*W. P. Fessenden,* for the defendants.

